## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MINNESOTA

| | |
|---|---|
| Heather L. Reyes on behalf of herself and all others similarly situated, | Case No. |
| Plaintiff, | |
| v. | Judge |
| | Magistrate Judge |
| JTH HOLDING, INC. and its affiliate and subsidiary JTH TAX, INC. d/b/a LIBERTY TAX SERVICE, Delaware Corporations, | |
| Defendants. | JURY TRIAL DEMANDED |

## PLAINTIFF'S CLASS ACTION COMPLAINT

COMES NOW Heather L. Reyes, on behalf of herself and all others similarly situated, for her causes against Defendant JTH Holding, Inc., and its affiliate and subsidiary JTH Tax, Inc., d/b/a Liberty Tax Service, ("Liberty" or "Defendant")allege and state as follows:

## I.    INTRODUCTION

1.      Defendant facilitated and made refund anticipation loans for Ms. Reyes in coordination with Republic Bank & Trust Co. ("Republic Bank"), a state chartered bank in Kentucky. Although Defendant markets these products under different names (Refund Anticipation Loans, Electronic Refund Checks, Electronic Refund Deposits, Federal Tax Refund Checks, and State Tax Refund Checks), all of the products are "Refund Anticipation Loans" as defined by Minnesota state law, as they all include common features: the extension of a short-term loan or credit, secured and repaid directly from the consumer's IRS tax refunds. Therefore, throughout this Complaint when the term "RAL" is generically used it will refer to all of the refund anticipation products offered by Defendant, including the products Defendant refers to in its marketing as Electronic Refund Checks ("ERCs") and Electronic Refund Deposits ("ERDs").

## II.   PARTIES.

2.      Plaintiff Heather Reyes is a citizen of Minnesota, residing in the District of Minnesota, who had her taxes prepared at an office of Defendant located in the District of Minnesota. Defendant facilitated and made RALs for Ms. Reyes during the Class Period.

3.      Defendant JTH Holding, Inc. is a holding company engaged through its subsidiaries as a franchisor and operator of a system of income tax preparation offices located in the United States and Canada, and its principal operations are conducted through its largest subsidiary, Defendant JTH Tax, Inc. d/b/a Liberty Tax Service. Defendant provides tax preparation services through more than 3,800 offices in the United States and Canada, all doing business under the name Liberty Tax Service. Both Defendant entities are Delaware corporations

with their principal places of business at 1716 Corporate Landing Parkway, Virginia Beach,

Virginia 23454. Defendant JTH Holding, Inc. can be served through its registered agent The

Corporation Trust Company, at Corporation Trust Center, 1209 Orange Street, Wilmington, DE

19801. Defendant JTH Tax, Inc. can be served through its registered agent Registered Agent

Solutions, Inc., at 1679 S. Dupont Highway, Suite 100, Dover, Delaware 19901.

## III.   JURISDICTION AND VENUE.

4.      This Court has jurisdiction over Defendant since at all relevant times Defendant

has regularly and systematically transacted business within the State of Minnesota as a provider

of tax return preparation services and other services.  Defendant derives substantial revenue from

Minnesota residents.

5.      This Court has subject matter jurisdiction over this class action under the Class

Action Fairness Act ("CAFA") because there are more than one-hundred class members, all of

the members of the class are citizens of a state (Minnesota) different from that of Defendant, and

the aggregate of class members' claims is more than $5 million.  28 U.S.C. § 1332(d).

6.      Venue is proper in this Court because the tax preparation services and loan

marketing and facilitation that give rise to Plaintiff's claims occurred in this District.  28 U.S.C.

§ 1391(b) (2).  Venue is also proper in this Court because the Defendant has numerous offices in

this District.  28 U.S.C. § 1391(b)(1).

## IV.   FACTS.

### A.      DEFENDANT AGGRESSIVELY MARKETS, FACILITATES, AND MAKES REFUND ANTICIPATION LOAN PRODUCTS AT EXORBITANT TRIPLE-DIGIT INTEREST RATES TO THE WORKING POOR AND MINORITIES.

7.      Refund Anticipation Loans ("RAL") are short-term loans or extensions of credit

that are made in anticipation of, and whose payment is secured by, a client's federal or state

income tax refund or both.  These loans are marketed, arranged, facilitated, and made by for-

profit tax preparers such as Defendant in coordination with banking entities that provide the loan and banking products. RALs include exorbitant finance charges that, when properly calculated in accordance with the Truth in Lending Act and relevant state laws, often exceed 100% APR.

8.      Although a significant profit source to Defendant and other for-profit tax preparers, and a fundamental part of their business models, these aggressively marketed bank products provide little to no value to consumers at predatory interest rates and fees, often in conjunction with exorbitant tax preparation fees for straightforward tax filings. Tax filers can usually get their federal tax refund in 8 to 15 days by direct deposit, without getting a loan or paying any extra fees to companies like Defendant. The IRS usually issues refunds by check within 21 to 28 days.

9.      The Department of Treasury has determined that RAL usage is highly concentrated in poor and minority communities.[1] Across the U.S., just 20% of all communities account for nearly 70% of all RALs.[2] Defendant and other tax preparers target these high-interest-rate loans to minorities and the working poor, particularly those who receive the Earned Income Tax Credit ("EITC"). The EITC is a refundable credit provided through the tax system since 1975 intended to boost low-wage workers out of poverty while also encouraging work. It is the largest federal anti-poverty program, with over $50 billion provided to 21.7 million families in 2010 alone.[3]It is axiomatic that EITC money is meant to reach the individuals and families who qualify.

---

[1]U.S. Department of Treasury, Characteristics of Users of Refund Anticipation Loans and Refund Anticipation Checks 1 (2010).
[2]*Id.* at 17-20.
[3]Internal Revenue Service ("IRS"), *2010 Tax Statistics*

10.     The median adjusted gross income among RAL consumers is $19,768.[4]  In 2008, although only 17% of tax filers received the EITC, EITC claimants comprised 64% of RAL consumers.  Viewed another way, 33% of EITC claimants purchased a RAL, compared to only 3% of non-EITC claimants.[5]

11.     Defendant aggressively markets RALs to its clients for whom it provides tax preparation services, as these predatory bank products are a critical part of its business model.  In 2009, about 74% of Defendant's clients obtained a RAL.[6]  Within the general population, by comparison, less than 15% of tax filers opted for these products.  This is not mere coincidence.  Defendant aggressively markets RALs to the working poor so that a significant portion of the EITC goes to Defendant rather than the intended beneficiaries.  Fees from these predatory bank products accounted for 28% of Defendant's revenue in 2009, according to Defendant's Consolidated Financial Statement for 2010.

### B.     MINNESOTA REFUND ANTICIPATION LOAN LAWS.

12.     Many states, including the state of Minnesota, have passed laws specifically targeting RALs in an effort to eradicate long-standing, deceptive, and unconscionable practices in the for-profit tax preparer industry.  The Minnesota statute governing RALs and tax preparers, Minn. Stat. § 270C.445, ("Minnesota RAL laws"),focuses on the practices of tax preparers like Defendant who market, facilitate, and make RALs through third-party banks who actually provide the loans and the bank products. The legislature amended the statute in 2009 to increase the civil damages available to plaintiffs by providing for statutory damages amounting to twice the sum of (i) the tax preparation fees; and (ii) all interest and fees for any RAL.

---

[4]U.S. Department of Treasury, Characteristics of Users of Refund Anticipation Loans and Refund Anticipation Checks 16 (2010).
[5]Id. at 13.
[6]Id. at 22.

13.     Under the Minnesota RAL laws, a RAL includes any "loan or any other extension of credit, whether provided by the tax preparer or another entity such as a financial institution, in anticipation of, and whose payment is secured by, a client's federal or state income tax refund or both." Minn. Stat. § 270C.445, subd. 2(g).

14.     The Minnesota RAL laws define "tax preparer" as "a person providing tax preparation services" as defined in the statute. Minn. Stat. § 270C.445, subd. 2(h)(i). "Tax preparation services" include "assist[ing] with preparing or filing state or federal income tax returns" and "facilitat[ing] the provision of refund anticipation loans." Minn. Stat. § 270C.445, subd. 2(h)(1) and (2). To "[f]acilitate" means to "offer, arrange, [or] process . . . a refund anticipation loan." Minn. Stat. § 270C.445, subd. 2(d). "Person" is defined to include corporations such as Defendant. Minn. Stat. § 270C.445, subd. 2(e).

15.     The Minnesota RAL laws prohibit "tax preparers" such as Defendant from engaging in certain practices. The Minnesota RAL laws also require tax preparers who facilitate and make RALs to disclose, in writing, critical information about RALs, including the finance charges and interest rates associated with the loans and lower cost alternatives to RALs. At issue in this case are the Minnesota RAL laws' disclosure requirements and prohibition of tax preparers' arranging for payment for any service in connection with a RAL other than repayment of the RAL and the tax preparation fees.

16.     The Minnesota RAL laws require all tax preparers who facilitate and make RALs to conspicuously disclose critical information about the interest rate, fees, and timing of the RAL, as well as alternative means to receive refunds from the IRS in a timely manner without exorbitant add-on charges. Minn. Stat. § 270C.445, subd. 4(a) & 4a(2)(i)-(iv). These disclosures must be "provided to a client in a written notice on single sheet of paper," and be printed in

"capital and small font type fonts, in a minimum of 14-point type, with at least a double space between each statement." Minn. Stat. § 270C.445, subd. 4(b)-(c). These written disclosures are required to be separate, conspicuous, and in large type so that they are not lost amidst multiple pages of fine print.  The refund anticipation check provision also requires specific disclosures. Minn. Stat. § 270C.445, subd. 4b.

17.     Perhaps the most critical disclosure required by the Minnesota RAL laws is the interest rate for any loan product. The Minnesota RAL laws require all tax preparers who facilitate and make RALs to disclose, on a document separate from the loan materials, "[t]he annual percentage rate (APR), based on the estimated payment period" of the loan. Minn. Stat. § 270C.445, subd. 4a(2)(i). The Minnesota RAL laws require tax preparers who facilitate and make RALs to provide all disclosures required by the federal Truth in Lending Act ("TILA") (15 U.S.C. § 1601 *et. seq.*) and its implementing Regulation Z (12 C.F.R. Part 226). Minn. Stat. § 270C.445, subd. 3(19). Under TILA, all "finance charges" must be included in the calculation of APR. 15 U.S.C. § 1606. "Finance charge" includes any "charges, payable directly or indirectly by the person to whom credit is extended, and imposed directly or indirectly by the creditor as an incident to the extension of credit." 12 C.F.R. § 226.4(a).

18.     The Minnesota RAL laws prohibit the tax preparer from inserting into any agreement to facilitate a RAL a provision that arranges for the "deduction from any portion of the refund anticipation loan . . . for . . . the collection of any debt owed to any party for any other good or service other than a debt owed to the facilitator for the repayment of a refund anticipation loan and tax preparation fees...." Minn. Stat. § 270C.445, subd. 3a(a).

19.     In addition, the Minnesota RAL laws require that the tax preparer provide a separate written notice to the client in connection with any written agreement facilitating a

Republic RAL or an ERC/ERD that contains a mandatory arbitration clause. Minn. Stat. §
270C.445, subd. 3a(b). This notice must state that arbitration is the exclusive means of dispute
resolution, that the client has the right to opt out of arbitration within thirty days, and that the
arbitration clause does not apply to violations of the Minnesota RAL laws. Minn. Stat. §
270C.445, subd. 3a(b)(1)-(3).

20.     A tax preparer who violates any provision of the Minnesota RAL laws is liable to
the client for (1) actual damages; (2) incidental and consequential damages; (3) statutory
damages of twice the sum of the tax preparation fees charged to the client; (4) reasonable
attorney fees; (5) court costs; and (6) any other equitable relief this Court considers appropriate.
Minn. Stat. § 270C.445, subd. 7(c). A tax preparer who fails to make the required disclosures in
connection with the facilitation of a Republic RAL or a ERC/ERD or violates the prohibition on
arrangements for the payment of fees other than repayment of the RAL or the tax preparation
fees is additionally liable for statutory damages of twice the sum of all interest and fees for the
RAL. Minn. Stat. § 270C.445, subd. 7(c)(3).

21.     According to the Minnesota RAL laws, "[a]ny violation of [the Minnesota RAL
laws] is an unfair, deceptive, and unlawful trade practice within the meaning of section 8.31."
Minn. Stat. § 270C.445, subd. 7(a). Subdivision 3a of section 8.31 is the Minnesota Private
Attorney General Act and provides a private right of action for damages and attorney's fees for
violations of certain laws concerning consumer protections and restraints of trade. Minn. Stat. §
8.31, subd. 3a. The Unlawful Trade Practices Act (Minn. Stat. § 325D.09 *et seq.*) ("UTPA") is
included in section 8.31 and therefore a violation of Minnesota RAL laws also implicates the
UTPA. Minn. Stat. § 8.31, subd. 1. Any action taken for violations of the Minnesota RAL laws is
in the public interest. Minn. Stat. § 270C.445, subd. 7(a).

8

22.     It is a violation of UTPA when, "in connection with the sale of merchandise at retail[,]" a person "misrepresent[s] the true nature of such sale." Minn. Stat. § 325D.12(2). UTPA defines "[s]ale of merchandise at retail" as any sale to a direct consumer. Minn. Stat. § 325D.10(d) (excepting "(1) [a] sale for the purpose of resale or (2) a sale of substantial quantity of merchandise for business use only"). UTPA defines "sale" as "any sale, offer, or advertisement thereof or contract for the same." Minn. Stat. § 325D.10(c). The UTPA defines "person" to include corporations such as Defendant. Minn. Stat. § 325D.10(a).

23.     According to UTPA, "[a]ny person damaged . . . by reason of a violation of [UTPA] shall be entitled to sue for and have injunctive relief . . . and for the amount of the actual damages." Minn. Stat. § 325D.15.

24.     The Uniform Deceptive Trade Practices Act (Minn. Stat. § 325D.43 *et seq.*) (the "UDTPA") also governs the deceptive sales of goods or services in Minnesota. The UDTPA is violated when a person "represents that . . . services have . . . characteristics . . . that they do not have," or "engages in any other conduct which similarly creates likelihood of confusion or of misunderstanding." Minn. Stat. § 325D.44, subd. 1(5) & (13).

25.     According to the UDTPA, "[a] person likely to be damaged by a deceptive trade practice of another may be granted an injunction against it." Minn. Stat. § 325D.45, subd. 1. The UDTPA further provides that "the court may award attorney's fees to the prevailing party if . . . (2) the party charged with a deceptive trade practice has willfully engaged in the trade practice knowing it to be deceptive. Minn. Stat. § 325D.45, subd. 2. The remedies provided by the UDTPA are additional to remedies provided by other statutes. Minn. Stat. § 325D.45, subd. 3.

C.     **DISCLOSURE REQUIREMENTS UNDER THE TRUTH IN LENDING ACT**

26.     TILA, and its implementing Regulation Z, 12 C.F.R. Part 226, establish requirements for accurate disclosure of interest rates and finance charges when creditors provide loans and extensions of credit to consumers.

27.     Defendant is a creditor, in that Defendant, in conjunction with its banking partners, charges fees as a condition for obtaining the extension of credit for tax preparation fees (all banking products) and any advanced funds (Republic RAL) and at least a portion, if not all, of each consumer's debt is payable to Defendant.

28.     Plaintiff and Class Members are consumers for purposes of TILA.

29.     Violations of TILA are determined on an objective standard, based on the representations in the relevant disclosure documents, with no necessity to establish the subjective misunderstanding or reliance of particular consumers.

30.     TILA defines a finance charge as "…the finance charge in connection with any consumer credit transaction shall be determined as the sum of all charges, payable directly or indirectly by the person to whom the credit is extended, and imposed directly or indirectly by the creditor as an incident to the extension of credit." 15 U.S.C. § 1605(a). A "finance charge" is "the cost of consumer credit as a dollar amount," and includes "any charge payable directly or indirectly by the consumer and imposed directly or indirectly by the creditor as an incident to or a condition of the extension of credit."12 C.F.R. § 226.4(a). Finance charges within the meaning of TILA include fees and amounts charged by third parties where the contracting party requires the use of a third party or where the creditor retains a portion of the third-party charge.

31.     Consumers cannot obtain advanced funds or defer payment of tax preparation services through Defendant's RAL products without paying the Tax Refund Administration Fee, among other banking fees.

32.     The Tax Refund Administration Fee charged to recipients of Republic RALs, ERCs and ERDs constitutes a "finance charge" within the meaning of TILA, 15 U.S.C. § 1605, and Regulation Z, 12 C.F.R. § 226.4.

33.     Defendant failed to disclose to Plaintiff and the Class an interest rate calculated utilizing the guidelines established under TILA by failing to consider the Tax Refund Administration Fee a finance charge.

34.     For each ERC and ERD client, Defendant failed to disclose any interest rate or finance charge, thus violating the written disclosure requirements of TILA.

35.     For each Republic RAL client, Defendant failed to accurately disclose the interest rate, because it did not include the c as part of the finance charge, which violates the written disclosure requirements of TILA.

**D.     DEFENDANT'S ILLEGAL CONDUCT.**

36.     Throughout the Class Period, Defendant has facilitated and made RALs in conjunction with Republic Bank. Defendant marketed, facilitated, and made two types of bank products: (a) "Refund Anticipation Loan" ("Republic RAL"), and (b) "Electronic Refund Check" ("ERC") or "Electronic Refund Deposit" ("ERD"). All of these products are RALs as defined by the Minnesota RAL laws.

37.     Defendant has a high percentage of low-income clients and clients who receive the EITC.  In addition, as set forth above, Defendant has a high percentage of clients who purchase the Republic RAL, ERC, and ERD bank products.  Many of Defendant's clients cannot afford to pay Defendant's fees for tax preparation services out-of-pocket.  A key component to

Defendant's marketing campaign is that there is no up-front cost to the client. Although generally Defendant requires fees for tax preparation services to be paid at the time the client's taxes are prepared, Defendant provides the option of deferring payment of those fees until the tax refund has been received from the IRS if the client purchases a Republic RAL, an ERC, or an ERD. In the case of a Republic RAL, tax preparation fees are deducted from the loan funds when the loan is provided. In the case of an ERC or ERD, the tax preparation funds are deducted from the refund amount. On information and belief, this component of these bank products expands the market for Defendant's tax preparation services, increases the amount that can be charged for tax preparation services, and increases the franchise fees and royalties collected by Defendant.

### 1.    ERCS/ERDS.

38.    During the Class period, Defendant, through its offices, marketed, facilitated and made ERCs/ERDs to its tax preparation clients (including Plaintiff and all Class Members), following common practices and procedures and using uniform forms, applications and disclosures as described below. Each bank product entails the establishment of a "Deposit Account" in the consumer's name at Republic Bank. The Deposit Account is a non-interest-bearing "account" established for the sole purpose of receiving the client's federal and/or state tax refund and disbursing those funds in a limited manner established by the loan agreement.

39.    Defendant chooses the bank that will administer the Deposit Account. The consumers have no choice as to which bank manages their Deposit Account.

40.    The consumer cannot make any other deposits to this dummy account or direct any other withdrawals. When the client's tax return is sent to the IRS, the dummy account is identified as the destination for any refund to which the client may be entitled. Once the IRS is notified, the refund destination cannot be changed. If for any reason the consumer's refund is not deposited in the dummy account or if the refund is less than anticipated based upon

Defendant's tax preparation services, the consumer is still held liable for the full amount of the tax preparation fees charged by Defendant.

41.   When the consumer's tax refund is deposited into the account, Republic Bank (as authorized to act on the consumer's behalf, pursuant to the terms of the loan agreement) first disburses the funds to pay, among other things:

   a.   The consumer's debt to Defendant for the tax preparation fees;

   b.   "Bank Fees" to Defendant and Republic Bank, including $29.95 minimum payment of a "Tax Refund Administration Fee," and, for the 2009 tax year, an additional $10.00 "Administration Fee" if a state tax refund is directed to the Deposit Account;

   c.   any and all other debts to Republic Bank including, for example, debts related to bank products sold to the consumer in previous tax years.

Any remaining funds are disbursed to the consumer either by check (if the consumer purchased an ERC) or by direct deposit to the consumer's personal bank account (if the consumer purchased an ERD).

42.   The ERCs/ERDs bank products are RALs as defined by Minnesota RAL laws. Each product encompasses an extension of credit by Defendant of the fee for tax preparation services, which otherwise would be due at the time the services were provided. With an ERC/ERD, Defendant grants deferral of payment for approximately 12 days (the time period needed to receive the tax refund). Defendant provides no disclosure of the **triple-digit** interest rate or finance charge for these bank products in violation of the Minnesota RAL laws and TILA. *See, e.g.*, U.S. F.D.I.C. Amended Notice of Charges for an Order to Cease and Desist, *In the Matter of Republic Bank & Trust Company, Louisville Kentucky*, dated May 3, 2011 at ¶ 34 ("By

13

failing to disclose to taxpayers in the Assisted Refund transactions that the TRAF [Tax Refund Administration Fees] are finance charges for deferral of the tax preparation fees owed, the EROs [Defendant and other electronic refund operators] have violated the written disclosure requirements under TILA on a nationwide basis in each Assisted Refund transaction"). The failure to disclose the finance charge in connection with the extension of credit is misleading, and is a violation of the UTPA and the UDTPA.

43.     Defendant shoulders the risk of loss that exists if the tax refund funds are insufficient to cover the tax preparation costs or if no tax refund is issued at all.

44.     In addition, Defendant violated the Minnesota RAL laws by failing to provide a separate written notice stating that arbitration was the exclusive means of dispute resolution, that its clients had the right to opt out of arbitration within thirty days, and that the arbitration clause would not apply to violations of the Minnesota RAL laws, notwithstanding that its ERC/ERD facilitation agreements contain a mandatory arbitration clause, in violation of Minn. Stat. § 270C.445, subd3a(b).

### 2.     REPUBLIC RALS.

45.     During the Class period, Defendant, marketed, facilitated and made Republic RALs to its tax preparation clients (including Plaintiff and all Class Members), following common practices and procedures and using uniform forms, applications and disclosures as described below.  As with an ERC/ERD, and as described above, a Republic RAL entails the establishment of a dummy "Deposit Account" in the consumer's name at Republic Bank.

46.     The Republic RAL includes two components: (a)  a loan and extension of credit of the fees for Defendant's tax preparation services, just as with an ERC or ERD, and (b) a loan of additional funds also secured by the consumer's tax refund. The consumer receives the Republic RAL loan funds within one or two days after their taxes are prepared and filed. Prior to

14

the 2010 tax year, the loans were between $300 and $7,500.  For the 2010 tax year, the loans were for a set amount of $1,561.22.

47.     When the consumer's tax refund is deposited into the account, Republic Bank (as authorized to act on the consumer's behalf, pursuant to the terms of the loan agreement)first disburses the funds to pay, among other things:

   a.     The consumer's debt to Defendant for the tax preparation fees;

   b.     The consumer' debt for the advanced funds;

   c.     "Bank Fees" to Defendant and Republic Bank, including: (i) $29.95 minimum payment of the "Tax Refund Administration Fee,"(ii) what Republic terms the "finance charge" (0.78% of the loan amount for the 2009 tax year and a set amount of $16.22 for the 2010 and 2011 tax years),(iii)in the 2010 and 2011 tax years, a $45.00 "Credit Investigation Fee"; and (iv) in some instances a $10.00 "Administrative Fee" for state tax refunds.

   d.     any and all other debts to Republic Bank including, for example, debts related to bank products sold to the client in previous tax years.

Any remaining funds are disbursed to the consumer either by check (if the consumer purchased an ERC) or by direct deposit to the consumer's personal bank account (if the consumer purchased an ERD).

48.     The Republic RALs are RALs, as defined by the Minnesota RAL laws. Defendant misrepresents the finance charge by not including the Tax Refund Administration Fee (and where relevant the Administration Fee for state tax refunds) in the calculation of the finance charge, in violation of the Minnesota RAL laws and TILA. *See, e.g.*, U.S. F.D.I.C. Amended Notice of Charges for an Order to Cease and Desist, *In the Matter of Republic Bank & Trust*

*Company, Louisville Kentucky*, dated May 3, 2011 at ¶ 34 ("By failing to disclose to taxpayers in the Assisted Refund transactions that the TRAF [Tax Refund Administration Fees] are finance charges for deferral of the tax preparation fees owed, the EROs [Defendant and other electronic refund operators] have violated the written disclosure requirements under TILA on a nationwide basis in each Assisted Refund transaction").

49.     In addition, Defendant violated the Minnesota RAL laws by failing to provide a separate written notice stating that arbitration was the exclusive means of dispute resolution, that its clients had the right to opt out of arbitration within thirty days, and that the arbitration clause would not apply to violations of the Minnesota RAL laws, notwithstanding that the RAL facilitation agreement contained a mandatory arbitration clause, in violation of Minn. Stat. § 270C.445, subd3a(b).

### E.     FACTUAL ALLEGATIONS AS TO NAMED PLAINTIFF.

50.     Heather Reyes has been a customer of Defendant since at least the 2009 tax year. In the tax years 2009 through 2011, Ms. Reyes, who filed as the head of household for herself and her son, was eligible for and received the EITC each year. Each year, Defendant prepared tax returns for Ms. Reyes and also facilitated RALs at Defendant's franchise in Oakdale, Minnesota. Specifically, Defendant facilitated an ERD for Ms. Reyes's state tax refund in tax year 2009. Defendant also facilitated a Republic RAL and an ERD for Ms. Reyes in tax year 2010, and a Republic RAL and ERC for Ms. Reyes in tax year 2011.

51.     Defendant charged Ms. Reyes the following amounts for tax preparation in each of the respective tax years 2009 through 2011: $227, $182, and $202.In each year, Ms. Reyes did not pay these fees at the time of service, but deferred payment to be taken out of her tax refund,

which would be directly deposited into a one-transaction dummy account (Deposit Account) at Republic Bank, and paid the fees at that time.

52.     In each of the tax years 2009 through 2011, Defendant charged Ms. Reyes a "Tax Refund Administration Fee" of $29.95 to set up a Deposit Account into which the IRS deposited her tax refund. After the IRS deposited Ms. Reyes's tax refund into her Refund Account, Defendant would then make a deposit into Ms. Reyes's bank account for their refund minus all fees and charges due to Defendant and Republic Bank.

53.     In tax years 2010 and 2011, Ms. Reyes, in addition to the ERD, also purchased a Republic RAL.  For each of those tax years, Defendant also charged Ms. Reyes what it termed a "finance charge" of  $61.22.

54.     Defendant failed to provide Ms. Reyes the disclosures required under the Minnesota RAL laws. In the tax year 2009, Defendant failed to provide *any* disclosure to Ms. Reyes regarding the APR or finance charges regarding this RAL. In tax years 2010 and 2011, Defendant failed to accurately disclose the actual finance charges, which when properly calculated in accordance with TILA, the Minnesota RAL laws, the UTPA, and the UDTPA, include the Tax Refund Administration Fee. Ms. Reyes was actually charged $91.17 in finance charges in each year, and the respective APRs for each year were significantly higher than the 124.14% figures represented by Defendant in those years. Furthermore, in the tax year 2011, Defendant failed to sign, and also failed to obtain Ms. Reyes's signature on the statutorily required RAL notice.

55.     Defendant failed to provide accurate disclosures to Ms. Reyes regarding the APR or finance charge for the RALs it facilitated in tax years 2009 through 2011, in violation of the

Minnesota RAL laws, Minn. Stat. § 270C.445, subd 3(19) &, subd 4a; TILA, 15 U.S.C. § 1606; the UTPA, Minn. Stat. § 325D.12(2); and the UDTPA, Minn. Stat. § 325D.44, subd 1(5) & (13).

56.     Defendant also failed to provide a separate written notice stating that arbitration was the exclusive means of dispute resolution, that Ms. Reyes had the right to opt out of arbitration within thirty days, and that the arbitration clause would not apply to violations of the Minnesota RAL laws, notwithstanding that the RAL facilitation agreement signed by Ms. Reyes contained a mandatory arbitration clause, in violation of Minn. Stat. § 270C.445, subd3a(b).Class Action Allegations.

### F.     CLASS DEFINITION.

57.     Pursuant to Federal Rule of Civil Procedure 23, Plaintiff brings this action for itself and on behalf of a class defined as: All natural persons residing in the State of Minnesota who after February 1, 2006received a refund anticipation loan product facilitated and made by Defendant, which included a Tax Refund Administration Fee in which tax preparation and other fees were deducted by Defendant.

58.     Specifically excluded from the Class are:  (a) all federal court judges who preside over this case and their spouses; (b) all persons who elect to exclude themselves from the Class; (c) all persons who have previously executed and delivered to Defendant releases for all of their Class claims; and (d) Defendant's employees, officers, directors, agents, and representatives and their family members.

### G.     RULE 23(A) PREREQUISITES.

59.     **Numerosity.**    The Class is so numerous that joinder of all members is impracticable.  At this time, Plaintiff does not know the exact size of the Class.  Based on

information and belief, the Class is comprised of at least thousands of members so as to render

joinder of all Class Members impracticable.

60.    **Commonality.**  Common questions of law and fact predominate over individual

issues.  There is a well-defined community of interest in the questions of law and fact involved

affecting members of the Class.  The questions of law and fact common to the Class predominate

over questions affecting only individual Class members, and include, but are not limited to, the

following:

a.    Whether Defendant disclosed to clients for which it facilitated and made
Republic RALs, ERCs, or ERDs the interest rate, calculated as required by TILA,
and if not, whether such failure violated the Minnesota RAL laws, the UTPA, and
the UDTPA;

b.    Whether Defendant included the $29.95 charge for the Tax Refund
Administration Fee as part of the finance charge calculation when it disclosed the
interest rate for the Republic RALs, ERCs, or ERDs it facilitated and made in
Minnesota during the Class Period, and if not, whether such failure violated the
Minnesota RAL laws, the UTPA, and the UDTPA;

c.    Whether Defendant provided any disclosure of the interest rate for ERCs and
ERDs it facilitated and made to clients in Minnesota during the Class Period,
and if not, whether such failure violated the Minnesota RAL laws, the UTPA, and
the UDTPA;

d.    Whether Defendant provided the specific disclosures required by the
Minnesota RAL laws in a written notice when it facilitated and made Republic
RALs and ERCs/ERDs in Minnesota, and if not, whether such failure violated the
Minnesota RAL laws, the UTPA, and the UDTPA;

e.    Whether the Republic RAL and ERC/ERD facilitation agreements that
Defendant entered into with its clients in Minnesota contained mandatory
arbitration clauses; whether Defendant provided the specific disclosures required
by the Minnesota RAL laws regarding mandatory arbitration clauses in Republic
RAL and ERC/ERD facilitation agreements; and if Defendant did not provide
such disclosures, whether such failure violated the Minnesota RAL laws, the
UTPA, and the UDTPA.

61.    **Typicality**.  Plaintiff's claims are typical of the other Class Members' claims.  As

described above, Defendant uses common practices, applications, forms and disclosures in

19

committing the conduct that Plaintiff alleges damaged them and the Class Members.  Defendant

uniformly violated the Minnesota RAL laws, the UTPA and the UDTPA by engaging in the

conduct as described above, and these violations had the same effect on each member of the

Class.

62.    **Adequacy**.  Plaintiff is an adequate representative of the Class because she fits

within the class definition and her interests do not conflict with the interests of the members of

the Class she seeks to represent.  Plaintiff will prosecute this action vigorously for the benefit of

the entire Class.  Plaintiff is represented by experienced and able attorneys.  Class counsel have

litigated numerous class actions and complex cases, and Plaintiff's counsel intend to prosecute

this action vigorously for the benefit of the entire Class.  Plaintiff and class counsel can and will

fairly and adequately protect the interests of all of the members of the Class.

### H.    RULE 23(B) PREREQUISITES.

63.    Questions of law and fact common to the Class predominate over questions

affecting only individual Members, and a class action is superior to other available methods for

fair and efficient adjudication of the controversy.  The statutory damages sought by each member

are such that individual prosecution would prove burdensome and expensive given the complex

and extensive litigation necessitated by Defendant's conduct.  It would be virtually impossible

for the members of the Class to effectively redress the wrongs done to them on an individual

basis.  Even if the members of the Class themselves could afford such individual litigation, it

would be an unnecessary burden on the courts.

64.    Furthermore, individualized litigation presents a potential for inconsistent or

contradictory judgments and increases the delay and expense to all parties and to the court

system presented by the legal and factual issues raised by Defendant's conduct.  By contrast, the

class action device will result in substantial benefits to the litigants and the Court by allowing the

Court to resolve numerous individual claims based upon a single set of proof in just one case.

## V.    CAUSES OF ACTION.

### A.    FIRST CAUSE OF ACTION:  VIOLATION OF THE MINNESOTA REFUND ANTICIPATION LOAN LAWS (MINN. STAT. § 270C.445 *ET SEQ.*).

65.    Plaintiff incorporates by reference each of the foregoing allegations.

66.    The allegations in this cause of action are brought on behalf of Class Members

who received a Republic RAL, ERC, or ERD facilitated and made by Defendant.

67.    The named plaintiff and all class members are "clients" as defined by Minn. Stat.

§ 270C.445, subd 2(c).

68.    Defendant is a "tax preparer" as defined by Minn. Stat. § 270C.445, subd 2(h)(i).

69.    The Republic RALs and ERC/ERDs facilitated and made by Defendant are RALs

as defined by Minn. Stat. § 270C.445, subd 2(g).

70.    Defendant violated Minn. Stat. § 270C.445, subd 3a(a)by inserting into each RAL

facilitation agreement a provision that arranges for a deduction from the RAL for a bank fee for

each RAL it facilitated and made for a Class Member.

71.    Defendant violated Minn. Stat. § 270C.445, subd. 4a(2)(i) by failing to disclose,

on a document separate from the loan materials, "[t]he annual percentage rate (APR), based on

the estimated payment period" of the loan for each Republic RAL, ERC, and ERD it facilitated

and made for a Class Member.  For each ERC and ERD, Defendant failed to disclose any interest

rate or finance charge.  For each Republic RAL, Defendant failed to accurately disclose the

interest rate, as it did not include the Tax Refund Administration Fee as part of the finance

charge.

72.     Defendant violated Minn. Stat. § 270.445, subd3a(b) by failing to provide a separate written notice stating that arbitration was the exclusive means of dispute resolution, that Defendant's clients had the right to opt out of arbitration within thirty days, and that the arbitration clause would not apply to violations of the Minnesota RAL laws, notwithstanding that Defendant's Republic RAL and ERC/ERD facilitation agreements contained mandatory arbitration clauses.

73.     Defendant violated Minn. Stat. § 270C.445, subd. 3 and the standards of conduct required for tax preparers.

74.     For each violation set forth herein Defendant is liable under Minn. Stat. § 270C.445, subd 7 for (1) actual damages; (2) incidental and consequential damages; (3) statutory damages of twice the sum of the tax preparation fees charged to the client and all interest and fees for the refund anticipation loans it facilitated and made; (4) reasonable attorney fees; (5) court costs; and (6) any other equitable relief this Court considers appropriate.

**B.      SECOND CAUSE OF ACTION:  VIOLATION OF UNLAWFUL TRADE PRACTICES ACT (MINN. STAT. § 325D.09 *ET SEQ.*)**

75.     Plaintiff incorporates by reference each of the foregoing allegations.

76.     Pursuant to Minn. Stat. § 270C.445 Subd. 7(a), any violation of the Minnesota RAL laws is an unfair, deceptive, and unlawful trade practice within the meaning of Minn. Stat. § 8.31, and any action for violations of the Minnesota RAL laws is in the public interest.

77.     Defendant is a "person" for the purposes of the Unlawful Trade Practices Act, pursuant to Minn. Stat. §325D.10(a).

78.     Defendant's sales of refund anticipation loans are "sales of merchandise at retail" for the purposes of the purposes of the Unlawful Trade Practices Act. Minn. Stat. §325D.10(d).

79.     Pursuant to Minn. Stat. § 325D.12(2), it is unlawful when, in connection with the sale of merchandise at retail, any person misrepresents the true nature of such sale.

80.     Each of Defendant's violations of the Minnesota RAL laws set forth above in the First Cause of Action is also a violation of the UTPA.

81.     In addition, Defendant violated the UTPA, including Minn. Stat. § 325D.12(2), by not accurately disclosing the finance charge for each RAL bank product purchased by a Class Member within the Class Period.  For each ERC and ERD, Defendant failed to disclose any interest rate or finance charge.  For each Republic RAL, Defendant failed to accurately disclose the interest rate, as it did not include the Tax Refund Administration Fee as part of the finance charge.

82.     In addition, by violating TILA in the manner described in Section III(C) of this Complaint, Defendant violated laws and regulations proscribing unfair, deceptive, or unconscionable acts or practices, therefore violating the UTPA.

83.     In addition, by violating Minnesota's usury laws in the manner described in Fourth Cause of Action of this Complaint, Defendant violated laws and regulations proscribing unfair, deceptive, or unconscionable acts or practices, therefore violating the UTPA.

84.     Plaintiff and the Class Members have a cause of action against Defendant pursuant to Minn. Stat. § 325D.12(2), and Minn. Stat.§ 8.31 Subd. 3a to recover damages as well as reasonable attorney's fees and costs.

C.     **THIRD CAUSE OF ACTION:  VIOLATION OF THE UNIFORM DECEPTIVE TRADE PRACTICES ACT (MINN. STAT. § 325D.43 *ET SEQ.*).**

85.     Plaintiff incorporates by reference each of the foregoing allegations.

86.     Pursuant to Minn. Stat. § 325D.44, a corporation violates the UDTPA when it "represents that . . . services have . . . characteristics . . . that they do not have," or "engages in

any other conduct which similarly creates a likelihood of confusion or of misunderstanding." Minn. Stat. § 325D.44, subd. 1(5) & (13).

87.     Each of Defendant's violations of the Minnesota RAL laws set forth above in the First and Second Causes of Action is also a violation of the UDTPA.

88.     In addition, Defendant violated the UDTPA, Minn. Stat. § 325D.43 *et seq.,* by not accurately disclosing the finance charge for each RAL bank product purchased by a Class Member within the Class Period.  For each ERC and ERD, Defendant failed to disclose any interest rate or finance charge.  For each Republic RAL, Defendant failed to accurately disclose the interest rate, as it did not include the Tax Refund Administration Fee as part of the finance charge.

89.     In addition, by violating TILA in the manner described in Section III(C) of this Complaint, Defendant violated laws and regulations proscribing unfair, deceptive, or unconscionable acts or practices, therefore violating the UDTPA.

90.     In addition, by violating Minnesota's usury laws in the manner described in the Fourth Cause of Action of this Complaint, Defendant violated laws and regulations proscribing unfair, deceptive, or unconscionable acts or practices, therefore violating the UDTPA.

91.     Plaintiff and the Class Members have a cause of action against Defendant pursuant to Minn. Stat. § 325F.69 to enjoin these deceptive practices by Defendant as described in this Complaint.

**D.     FOURTH CAUSE OF ACTION: VIOLATION OF MINNESOTA USURY LAWS**

92.     Plaintiff incorporates by reference each of the foregoing allegations.

93.     Minn. Stat. §334.01 provides that "no person shall directly or indirectly take or receive in money, goods, or things in action, or in any other way, any greater sum, or any greater

value, for the loan or forbearance of money, goods, or things in action, than $8 on $100 for one year." The interest rate, properly calculated, for each of the Republic RALs, and ERCs/ERDs facilitated and made by Defendant during the Class Period was greater than 8%. Accordingly, each and every Republic RAL, and ERC/ERD facilitated and made by Defendant during the Class Period violated the maximum lawful rate of interest established by Minn. Stat. §334.01.

94.     Defendant loaned money to Plaintiff that was absolutely repayable at an amount of interest greater than allowed by Minnesota law.  Defendant intended to earn more interest on these loans than allowed by Minnesota law, as evidenced by its contracts with Plaintiff.  Plaintiff was harmed when she paid the excessive interest rates and fees on these loans.

95.     Pursuant to Minn. Stat. §334.02 Plaintiff and Class Members are entitled to the "full amount of interest or premium so paid, with costs." Additionally, the Republic RALs, and ERCs/ERDs, as well as the Application Agreements, facilitated and made by Defendant are void due to their usurious nature as proscribed in Minn. Stat. §334.03.

## VI.  PRAYER FOR RELIEF.

Plaintiff seeks judgment in favor of themselves and the Class for the following:

A.     That the Court determines that this action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure; that Plaintiff is a proper class representative; and that the best practicable notice of this action be given to members of the Class represented by Plaintiff;

B.     That judgment be entered against Defendant and in favor of Plaintiff and the Class on the Causes of Action in this Complaint, for compensatory damages and statutory damages under the Minnesota RAL laws;

C.     That judgment be entered imposing interest on damages;

D.      That judgment be entered imposing litigation costs and attorneys' fees under the

Minnesota RAL laws, the UTPA, and the UDTPA; and

E.      For all other and further relief as this Court may deem necessary and appropriate.

## VII.  DEMAND FOR TRIAL BY JURY.

Plaintiff demands a jury trial on all issues so triable.

May **31**, 2012                          **Robins, Kaplan, Miller & Ciresi L.L.P.**

By: _____
                    Kathleen Flynn Peterson (#130382)
                    Stacey P. Slaughter (#296971)
                    Matthew R. Veenstra (#0392517)

                    2800 LaSalle Plaza
                    800 LaSalle Avenue
                    Minneapolis, MN 55402

                    T: 612-349-8500
                    F: 612-339-4181

                    *Attorneys for Heather Reyes*

Of Counsel:

Hank Bates
Darrin Williams
**CARNEY WILLIAMS BATES**
**PULLIAM & BOWMAN, PLLC**
11311 Arcade Drive, Suite 200
Little Rock, AR 72212
Tel: (501) 312-8500
Fax: (501) 312-8505

                    BY: /s/  Stacey P. Slaughter

                    *Counsel for Plaintiff and Proposed Class*

83118659.1